|  98 |  65 |
| 154 | 136 |

# Lebanon National Bank *versus* Karmany.

1. State courts have jurisdiction in actions brought against national banks, under the provisions of section 5197 of the Revised Statutes of the United States, to recover back the penalty imposed by section 5198 of said statutes upon such banks for taking usurious interest.

2. Bletz *v.* Columbia National Bank, 6 Norris 87, followed.

3. The Act of Congress of February 18th 1875, whereby this jurisdiction is expressly conferred, being purely remedial in its character, may be construed to apply where the right of action accrued before its passage, as well as after.

4. There are no banks of issue in Pennsylvania authorized to receive interest at a higher rate than six per cent.

5. The Act of May 23d 1878 (P. L. 109), expressly subjecting all banks of issue to the provisions of the Usury Law of May 28th 1858 (P. L. 622), was not intended as a recognition of the fact that prior to that date such banks had not been subject to the provisions of that law, but simply to remove any ground for fictitious claims to the effect that they were not so subject.

6. Although, by the provisions of the Usury Law of May 28th 1858 (P.L. 622), no penalty is imposed for taking a greater rate of interest than six per cent., yet no greater rate than that is " lawful," within the meaning of section 5197 of the Revised Statutes of the United States.

2 OUTERBRIDGE—5

Lebanon National Bank *v.* Karmany.

7. A national bank situate in Pennsylvania cannot lawfully take more than six per cent. interest; if it does so, it becomes liable for the penalty imposed upon it by the provisions of section 5198 of the Revised Statutes of the United States.

8. Suit may be brought for this penalty by the person paying the usurious interest, at any time after the said payment, even though the indebtedness on which the usurious interest was paid has not been discharged.

9. In such suit the plaintiff is entitled to recover twice the entire amount of interest paid, not twice only the amount of the excess above the legal rate.

10. In such suit the defendant cannot set off a judgment held by it against the plaintiff.

11. *Semble*, moreover, that after recovery of judgment by the plaintiff, the court will not exercise its equitable power to set off one judgment against the other.

12. Where a declaration clearly sets forth the cause of action and the matters claimed, mere defects in form will not now avail as formerly.

13. Necessary form and allegations of a declaration, in a suit against a national bank, to recover the penalty for taking usurious interest, discussed and passed upon.

May 17th 1881.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

ERROR to the Court of Common Pleas of *Lebanon county:* Of May Term 1881, No. 3.

Debt, by David M. Karmany against the Lebanon National Bank, to recover back twice the amount of usurious interest paid by the plaintiff on certain loans and discounts, as the penalty prescribed by section 5198, Revised Statutes of the United States, for the taking of usurious interest by national banks.

The declaration averred, in a single count, that within two years from the commencement of the action the plaintiff paid and the defendant knowingly took and received a greater rate of interest than six per cent., the lawful rate in Pennsylvania, on seventy several transactions of loan and discount (specifying them particularly), such payments of illegal interest amounting in the aggregate to $1,845.12; and the plaintiff claimed to recover, as the penalty prescribed by said Act of Congress, twice the said amount, to wit, the sum of $3,690.24.

The defendant pleaded *nil debet*, and special pleas to the following effect, viz. :   1. That the court has no jurisdiction of the action, the jurisdiction of suits to recover penalties incurred under statutes of the United States being exclusively in the courts of the United States. 2. That the bank defendant, under

[Lebanon National Bank *v.* Karmany.]

the laws of the United States and its charter, is authorized to reserve and take interest at the rate allowed by the laws of Pennsylvania to be taken by banks of said state having power to issue circulating notes; that the following-named state banks were incorporated by the laws of Pennsylvania prior to January 1st 1874, and continued in existence at the time of the commencement of this suit, having power to issue circulating notes, and with power to take and reserve such rates of interest on any loan or discount as might be agreed upon by the parties contracting with said banks, to wit:

| Name. | Date of Act of Incorporation. | Pamph. L. | |
|---|---|---|---|
| The Southwark Banking Co. of the City of Philadelphia | June 2d 1871 | 1872, App. | 1359 |
| The Franklin Bank of the City of Philadelphia | April 1st 1870 | 1870, | 736 |
| The Germania Bank, located in the City of Philadelphia | June 2d 1871 | 1874, App. | 325 |
| The United States Banking Co., located at Philadelphia | June 2d 1871 | 1873, App. | 987 |
| The Twenty-Second Ward Bank of Germantown, Philadelphia | May 17th 1871 | 1871, | 886 |
| The Manayunk Bank, located in the City of Philadelphia | June 14th 1871 | 1871, | 1358 |
| The Bank of America, located at Philadelphia | April 27th 1870 | 1871, App. | 1532 |
| The People's Bank of the City of Philadelphia | Feb. 25th 1870 | 1870, | 237 |
| The Butchers' and Drovers' Bank, at Philadelphia | April 27th 1870 | 1871, App. | 1537 |
| The West End Bank, to be located at Philadelphia | Nov. 20th 1871 | 1872, App. | 1383 |
| The Market Bank, to be located at Philadelphia | April 27th 1870 | 1871, App. | 1534 |
| The Stroudsburg Bank, at Stroudsburg | March 6th 1872 | 1872, | 792 |
| The Quaker City Bank | May 23d 1871 | 1871, | 1058 |
| The State National Bank | June 2d 1871 | 1872, App. | 1357 |
| The Safe Deposit and Trust Co. of Wheatland, now the Penn. Bank of Pittsburgh. | April 5th 1872 | { 1872, { 1873, | 972 165 |
| The Petroleum Bank, at Philadelphia, now the Shackamaxon Bank. | Nov. 30th 1871 | { 1872, App. { " | 1381 1037 |

The special plea further averred that the interest taken by the defendant in the transactions declared on was at a rate agreed upon between the plaintiff and defendant. 3. A special plea of set-off, averring that a larger sum than the plaintiff claimed to recover was due by the plaintiff to the defendant, which the defendant claimed to set off in this action.

Issue was joined on these pleas.

On the trial, before HENDERSON, J., the plaintiff proved the several transactions declared on in the *narr.*, on which interest had been paid at the rate of eight per cent., except that in several instances there were minor discrepancies in the amounts of interest averred to have been paid and the amounts proved to have been paid. The total variance amounted to $33.35.

On cross-examination the plaintiff testified that a short time after bringing this suit he assigned all his interest in whatever might be recovered to a stranger.

The defendant offered in evidence, under the plea of set-off, certain judgments recovered by defendant against the plaintiff, exceeding in amount the penalty claimed in this action. Objected to, on the ground that set-off is not admissible in an action for a statutory penalty. Objection sustained. Exception. (First assignment of error.)

The defendant presented numerous points, requesting the Court to instruct the jury substantially as follows :

1–6. State courts have no jurisdiction of a suit to recover a penalty incurred under a law of the United States, or if they have, it is only by virtue of the Act of Congress of February 18th 1875, and no recovery can be had for usury taken before that date. *Answer.* The first six points deny the jurisdiction of the state courts ; we are of the opinion that this is not now an open question, that the state courts have jurisdiction, and that the plaintiff may recover the full penalty, twice the amount of interest paid, for a violation of said section 5198.

7–11. That certain state banks (above named), or some of them, are "banks of issue," having the right to take such rate of interest as may be agreed upon, and that the defendant national bank therefore has, under section 5197, Revised Statutes, the same right. *Answer.* These points substantially involve the same proposition, and are answered in the negative. It does not appear that the banks named are banks of issue, having the right to charge a rate of interest greater than six per cent. per annum. And in fact and in law there is no bank of issue in Pennsylvania authorized to charge a rate of interest in excess of the legal rate.

12, 13. That under the laws of Pennsylvania parties are allowed to reserve and contract for such rate of interest as they may agree upon ; and that therefore the defendant bank has the same right. *Answer.* There is nothing in the statute allowing parties to contract in reference to the rate of interest as therein provided, which authorizes those banks to take, reserve or charge a rate of interest or discount in excess of the legal rate, which is six per cent. per annum.

14, 15. No action will lie for recovery of the penalty until the payment of the principal of the notes on which usurious interest was taken, and it appearing by the evidence that the notes for $7,500 and $6,000 respectively remain unpaid, there can be no recovery of the penalty as to usurious interest taken thereon. *Answer.* Negatived.

16, 17. No more than twice the amount of the interest paid in excess of the legal rate can be recovered. *Answer.* Negatived.

18. This action is a personal one, and it appearing that the plaintiff has assigned his interest in the suit, he cannot recover. *Answer.* This action is brought, maintained and prosecuted by the person who paid the usurious interest or discount, and there is no evidence of such an assignment as to work an abandonment of it, or justify the court in saying it cannot be maintained.

19, 20. The action being a penal one, the recovery of one penalty is all that is permitted. *Answer.* Negatived. A recovery may be had for twice the amount of interest or discount received and drawn on usurious contracts, within the period allowed by law, notwithstanding the interest may have been charged and received on several notes or loans on the renewals of them, if the interest so received was illegal.

21–25. There being but one count in the declaration, and the evidence showing a variance between the *allegata* and the *probata*, there can be no recovery in this action. *Answer.* Negatived. There is no such variance between the proof and the declaration as is fatal to a recovery.

27. The defendant is entitled to set off any debts, dues, or demands it may hold against the plaintiff. *Answer.* There can be no offset in this action.

Verdict for the plaintiff for $3,526.98. The defendant moved in arrest of judgment, and filed substantially the following reasons : The declaration is defective in that it does not sufficiently set out the Act of Congress, or any violation thereof ; and does not conclude *contra formam statuti ;* it does not set out the jurisdiction of the court. It contains but one count, claiming penalties on several different transactions ; the *narr.* avers that usurious interest was taken on loans and discounts, while the proof is that it was taken on notes and drafts which are not set out in the *narr.* For this and other variances between the proof and the declaration, there can be no recovery.

The court overruled the motion in arrest of judgment, and entered judgment on the verdict, HENDERSON, J., filing the following opinion :

" The motion for a new trial has been withdrawn ; we shall

[Lebanon National Bank *v.* Karmany.]

briefly dispose of the motion in arrest of judgment. The declaration is sufficiently formal, and clearly and distinctly sets out the cause of action. It has substance, even if defective in or for the want of formal averments ; it was amendable, and is cured by the verdict, or may still be amended, so as to conform to the evidence and supply any mere technical defect. This court has jurisdiction, and of this we take notice, it is not necessary to plead it formally, and if it was, the jurisdiction is apparent, and in this no reason exists for an arrest of judgment. It is trifling to say that there was no proof of the Act of Congress. It is the law of the land, of which we may well take notice, but it was before court and jury from the first to last so fully and clearly that it would have been useless to make a note of it or call for proof. There is no necessity for more than one count ; the action is debt ; the cause of action is clearly stated ; it is sufficiently certain for an indictment, if the taking of usurious interest had been made an indictable offense. There is no variance between the verdict and the claim set out in the *narr.* This is not an action for a fixed and definite penal sum ; it is an action to recover a penalty which is determined by the amount of interest or discount paid and received, and necessarily requires some calculation, and a mere discrepancy in a date or amount, depending on the testimony in the cause, is not such a variance as defeats the action ; this may be amended before or after verdict. There is no substance or merit in any of the reasons assigned ; *the truth is manifest that a large amount of usurious interest has been taken and received by the defendant from the plaintiff*, and to whittle away the rights of the plaintiff, under the law, by sharp and severe technical points of pleading after verdict, is a denial of justice.

" We overrule the motion in arrest of judgment.

" And now, May 3d 1880, it is ordered and directed that judgment be entered on the verdict on payment of jury fee."

The defendants took this writ of error, assigning for error the exclusion of their offer of judgments held by them against the plaintiff, the answers to their points, the overruling of their motion in arrest of judgment, and the entering of judgment on the verdict for the plaintiff.

*Grant Weidman* and *C. P. Miller*, for the plaintiff in error. —Although this court has decided in favor of the jurisdiction of a state court in such an action as this, we respectfully urge a reconsideration of the question, on the following grounds. By the Revised Statutes of the United States, section 117, approved June 22d 1874, it is provided : " The jurisdiction vested in the courts of the United States, in the cases and proceedings hereinafter mentioned, shall be *exclusive* of the courts of the several

states.  First.  .  .  .  .  Second.  Of all suits for *penalties* and forfeitures incurred under the laws of the United States." By " An Act to correct errors and to supply omissions in the Revised Statutes of the United States," approved February 18th 1875, section 5198 is amended by adding thereto, " That suits, actions and proceedings against any associations *under this title* may be had  .  .  .  .  in any state, county or municipal court in the county or city in which said association is located, having jurisdiction in similar cases."  The " title " referred to is general, viz.: National Banks, title LXII.  This general provision is not repugnant to the prior provision that United States courts shall have exclusive jurisdiction of suits for *penalties* incurred under United States laws.  A statute creating a new jurisdiction should be strictly construed:  Dwarris on Statutes, *736.  Congress cannot give jurisdiction to state courts to try offenses against the laws of the United States :  Huber *v.* Reily, 3 P. F. Smith 118 ;  Martin *v.* Hunter's Lessee, 1 Wheat. 304 ; Ely *v.* Peck, 7 Conn. 242.  In any case, the jurisdiction did not exist prior to the Act of 1875, and as nearly all of the alleged usurious transactions took place before that act was passed, the judgment below was erroneous.

The state banks mentioned in the plea were banks of issue, having the right to stipulate for any rate of interest: Act of April 16th 1850, §§ 1, 10, 22, Pamph. L. 477.  This power of banks organized under that act was recognized in the act without special legislation authorizing it, and where the legislature did not intend it to be used they expressly denied it: see Charter of Lock Haven Savings Bank, Pamph. L. 1872, p. 466, § 1.  That such power existed is further shown by the express repeal of such powers by the Act of May 23d 1878, sections 1, 2 ;  Pamph. L. 109.  The object for giving national banks similar privileges to those enjoyed by state banks is stated in Tiffany *v.* Nat. Bank of Missouri, 18 Wallace 409 ;  and their power was recognized by the Circuit Court of the United States for Pennsylvania in First Nat. Bank of Mount Pleasant *v.* Duncan, 6 W. N. C. 158.

By the laws of Pennsylvania it is not *illegal* to agree upon a higher rate than six per cent., though the debtor cannot be *compelled* to pay more: Act of May 28th 1858, § 2 ; Pamph. L. 622 ;  Appeal of Second Nat. Bank of Titusville, 6 W. N. C. 156 ;  Miners' Trust Company Bank *v.* Roseberry, 31 P. F. Smith 312.  National banks, therefore, have the same right : Tiffany *v.* National Bank of Missouri, 18 Wallace 409.  The question whether there was such an agreement in this case should have been submitted to the jury.

The principal of the debt in this case is still unpaid, and

until a lender has received more than the principal loaned, and legal interest, the offense of usury is not consummated: Brestle *v.* Mehaffie, 7 Harris 117; Duncan *v.* First Nat. Bank of Mount Pleasant, 11 Bankers' Mag. 787; Brown *v.* Second Nat. Bank of Erie, 22 P. F. Smith 214.

The penalty recoverable is twice the *excess* paid over the legal rate, not twice the entire interest: Brown *v.* Second Nat. Bank of Erie, 22 P. F. Smith 214; Hintermister *v.* First Nat. Bank of Chittenango, 3 Hun (N. Y.) 345.

The plaintiff, having assigned his interest in the suit, has no standing to maintain it. The statute professes to deal only with the parties to the transaction: Miners' Trust Company Bank *v.* Roseberry, 31 P. F. Smith 312; Titusville Bank's Appeal, 6 W. N. C. 153; Smith *v.* Exchange Bank of Pittsburgh, 26 Ohio St. 141.

The variances between the *allegata* and the *probata* were fatal. The penalty is measured by the offense as charged and proved, and the amount lent must be exactly laid, because it defines the penalty. A slight variance in an action for usury is substantial: Commonwealth *v.* Commercial Bank, 4 Casey 397; Smith *v.* Brush, 8 Johns. 84; Hendrick *v.* Seely, 6 Conn. 176; Russell *v.* Society, 9 Conn. 508; De Forest *v.* Frary, 6 Cowen 151. The *narr.* was in other respects defective in substance and form.

This being an action of debt, set-off is permissible.

*W. M. Derr,* for the defendant in error.—It is settled that state courts have jurisdiction in this case: Bletz *v.* Columbia Nat. Bank, 7 Norris 87; Stephens *v.* Monongahela Nat. Bank, 7 Norris 157, 166; First Nat. Bank of Clarion *v.* Gruber, 8 W. N. C. 119.

Mr. Justice TRUNKEY delivered the opinion of the court, June 20th 1881.

In the twenty-eight points presented to the court below and in the more than thirty assignments of error, no question is made but that the plaintiff paid and the defendant received a large amount of usurious interest. That fact was too patent to be gainsaid. The court submitted to the jury to find the amount of interest charged on the several loans and discounts, and if in excess of the legal rate, with instructions that there could be no recovery for usurious interest paid on any contract or note not declared upon. This submission, involving the merits of the case, is not specified among the alleged errors.

The numerous assignments do not present so many points,

[Lebanon National Bank *v.* Karmany.]

and some of these do not seem to be so material as to require remark. In passing it may be noted that the statutes in this state providing for amendments in pleadings are very liberal, even permitting the courts to allow the filing of a declaration or plea after verdict, and these statutes have been liberally construed as remedial. When a declaration clearly sets forth the cause of action and the matters claimed, objections for defects in form will not avail as formerly.

The defendant denied the jurisdiction of the court. In Bletz *v.* Columbia Nat. Bank, 6 Nor. 87, it was decided that state courts have jurisdiction in an action by a borrower against a national bank, to recover back twice the amount of illegal interest paid by the borrower to the bank and taken in violation of the National Bank Act. That was the point in the case. Since, the judgment has been repeatedly followed, without attempt to add to the reasoning of Agnew, C. J., who supported it independently of the Act of February 18th 1875, amending section 5198 of the Revised Statutes of the United States. No sufficient reason appears for departure from the authority of that case. Moreover, said amendment expressly gives jurisdiction in said action to the state courts, and as it is purely remedial, it might be construed to apply where the action accrued prior to its date as well as after.

The defendant asked instructions that the banks named in the special plea are banks of issue, under the laws of this Commonwealth, within the meaning of section 5197 of the R. S. U. S., to which the court answered : " It does not appear that the banks named are banks of issue, having the right to charge a rate of interest greater than six per cent. per annum. And in fact, and in law, there is no bank of issue in Pennsylvania authorized to charge a rate of interest in excess of the legal rate." This ruling was in accord with the opinion of Agnew, C. J., in First Nat. Bank of Clarion *v.* Gruber, 6 Nor. 468, and with the subsequent decision of this court in the same case : 8 W. N. C. 119. At the second trial nearly all the same charters were pleaded as in this case. It is not alleged that these banks ever did issue circulating notes. It was not the legislative intent that they should have that right. Until their charters were construed to give it by National Banks, it was not suspected that such power had been granted. At the first session of the legislature after the national banks had set up this construction in court, a statute was enacted subjecting all banking corporations to the Act of May 28th 1858, relating to interest for the loan or use of money. It was well to remove any ground for said fictitious claims, and in doing so no validity or sanction was given those which were previously made.

In answer to the defendant's twelfth and thirteenth points the jury were instructed that nothing in the statutes of this Commonwealth, relating to the rate of interest, authorizes banks to take, reserve or charge a rate of interest in excess of six per centum per annum. The statute provides, " The lawful rate of interest for the loan or use of money, in all cases where no express contract shall have been made for a less rate, shall be six per cent. per annum." When a greater rate shall have been reserved or contracted for, the debtor shall not be required to pay the excess over the legal rate, and at his option he may deduct the excess from the amount of the debt, or when he shall have voluntarily paid the whole debt, with interest exceeding the lawful rate, he may recover the excess of interest by action : Act May 28th 1858, P. L. 622. This statute inflicts no penalties for charging or receiving unlawful interest, and it has been said that it is not unlawful for a debtor to pay, or a creditor to receive, more than the lawful rate, and that the man who agrees to pay more commits no violation of law, and is not bound to repudiate his contract : Appeal of Second Nat. Bank of Titusville, 4 Nor. 528. It is strictly true that no violation of law is committed in the making of such contract, that will be followed by pains and penalties, or forfeitures ; or that such contract will be deemed a fraud upon other persons ; and the remarks were to the end that the taking of more than six per cent. interest is not a fraud *per se* upon creditors. In another sense, the contract for a greater rate of interest than six per centum is in violation of law. In absence of a contract for a less rate, the plain letter of the statute is, six per centum per annum is the lawful rate of interest, and if the parties contract for a greater rate the contract is voidable as to the excess ; the debtor need not pay the excess, and if he pay the excess voluntarily he may recover it back by action. The court was clearly right in the instruction as as to the rate of interest banks may receive or charge on loans and discounts.

It is alleged that the court erred in refusing the defendant's points that no recovery can be had for the penalty under section 5198, unless the debt was also paid. The section is : " The taking, receiving, reserving or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in the nature of an action of debt, twice the amount of the interest thus paid, from the association taking or receiving the same."

" Two categories are thus defined, and the consequences denounced. 1. Where illegal interest has been knowingly stipulated for, but not paid ; there only the sum lent, without interest, can be recovered. 2. Where such illegal interest has been paid; then twice the amount so paid can be recovered in a penal action of debt, or suit in the nature of such action, against the offending bank, brought by the persons paying the same or their legal representatives :" Barnet *v.* National Bank, 8 Otto 555. The terms of the statute are too plain for different constructions. If illegal interest be contracted for the debt shall bear no interest. If such interest be paid, the offending bank is liable in an action for twice the amount. That liability is incurred the moment the bank takes the illegal interest. The intendment is to prevent banks contracting or receiving more than lawful interest for the use of money. To permit a bank which had actually received illegal interest, when sued for the penalty, to chop round and call it a credit on the principal, would vitiate the vindicatory clause of the statute. In such case the taking would amount to nothing more than a contracting to receive. The statute inflicts twice the penalty for taking that it does for contracting : Monongahela Nat. Bank *v.* Overholt, 38 Leg. Intell. 185. In Pennsylvania the statute authorizes the debtor, at his option, to deduct the excess of interest from the debt, or to pay the whole debt and unlawful interest, and then recover back the excess over the lawful. Such statutes and decisions under them throw no light on the question now pending.

It is urged that the court erred in refusing the defendant's point that no more can be recovered than twice the amount of the interest paid in excess of the legal rate. The statute makes the receiving or charging " a rate of interest greater than is allowed " " a forfeiture of the entire interest." " In case the greater rate of interest has been paid " the debtor may recover back " twice the amount of interest thus paid." The bank may take or charge the " rate " allowed by the laws of the state where it is located, and if no " rate " is fixed by said laws, it may take or charge a " rate " not exceeding seven per centum. It is clear the word rate is used in the same sense throughout. The lawful rate, measure, is certain, and a greater rate, whatever it may be, is a fixed measure by agreement of the parties. The entire interest forfeited is just the rate which was contracted. Upon payment and receipt of a greater rate than is lawful, twice the amount thus paid is twice the rate, twice the entire interest. To say that the meaning is, only a part of said greater rate, only the excess over the lawful rate, may be taken to measure the penalty, is a wresting of the words. The de-

[Lebanon National Bank *v.* Karmany.]

fendant cites and relies on the case of Hintermister *v.* First Nat. Bank of Chittenango, 3 Hun, 345, where it was decided that only twice the amount paid in excess of the lawful interest can be recovered. Great weight is justly given to the decision of that court, but in this case we think its reasoning and conclusion are directly at variance with the statute. We adopt the ruling of Dillon, Cir. J. of U.S., that the amount of the recovery is twice the full amount of interest paid, and is not limited to twice the excess of interest paid over the legal rate : Crocker *v.* First Nat. Bank of Chetopa, 3 Cent. L. Jour. 527.

In answer to the defendant's twenty-seventh point the court charged that there can be no set-off in this action. The plaintiff's claim is not within the Defalcation Act, which applies where the parties are " indebted to each other upon bonds, bills, bargains, promises, accounts or the like." It arises from the defendant's violation of a statute, remedial and penal, which gives the borrower the right to recover back from the bank twice the amount of illegal interest paid, for the two-fold purpose of compensation and example—the recovery being a recompense to the one and a punishment of the other : Monongahela Nat. Bank *v.* Overholt, *supra*. It was decided in Barnett *v.* National Bank, 8 Otto 555, that in an action on a bill of exchange, the defendant could not set off a claim for twice the amount of illegal interest he had paid the bank ; that his remedy for the wrong was a penal suit, and he could have redress in no other mode or form of procedure. That set-off is not allowed in such actions is well settled. When the prescribed action for recovery is debt, or action in the nature of debt, it gives no right of set-off. After the plaintiff shall have obtained judgment, if the defendant have a judgment against the plaintiff in another case, there is power in the court to order one judgment to be set off against the other, governed by equitable principles. But such principles do not apply in a suit where the claim is in the nature of a penalty for violation of a statute so as to allow defalcation.

Nothing need be added to the opinion of the learned judge of the Common Pleas, wherein he gave his reasons for denying the motion in arrest of judgment.

Judgment affirmed.