## EASTERN STATES PETROLEUM CO., Inc., v. ASIATIC PETROLEUM CORPORATION et al.

District Court, S. D. New York.
April 13, 1939.

Root, Clark, Buckner & Ballantine, of New York City (John M. Harlan and Leslie H. Arps, both of New York City, of counsel), for plaintiff.

Cravath, deGersdorff, Swaine & Wood, of New York City (Wm. D. Whitney and Joseph Day Lee, both of New York City, of counsel), for third-party defendant Mexican Eagle Oil Co., Ltd.

LEIBELL, District Judge.

By this motion plaintiff, Eastern States Petroleum Co., Inc., seeks summary judgment dismissing a counterclaim asserted by the third-party defendant, Compania Mexicana De Petroleo "El Aguila", S. A., against the plaintiff.

The action itself was brought December 9, 1938, under the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, and the Clayton Act, 38 Stat. 730, to enjoin the defendants from interfering with the plaintiff's foreign commerce, and to recover treble damages.

The original defendants were Asiatic Petroleum Corporation, Anglo-Mexican Petroleum Corporation, Shell Union Oil Corporation, and Harold Wilkinson and Boyce Coppinger, who are officers or employees of one or more of the corporate defendants.

By an order dated January 31, 1939, entered herein on motion of the defendant, Harold Wilkinson, president of Asiatic Pe-

troleum Corporation and Anglo-Mexican Petroleum Corporation, the Compania Mexicana De Petroleo "El Aguila", S. A., was made a third-party defendant in this action. The third-party defendant, a Mexican corporation, became subject to process by its consent. Pursuant to said order defendant, Harold Wilkinson, as a third-party plaintiff, served a summons and a third-party complaint upon the third-party defendant. In the third-party complaint it was alleged that if plaintiff sustained the allegations of its complaint, the said Compania Mexicana De Petroleo "El Aguila", S. A., will or may be liable to the plaintiff for all or part of the plaintiff's claim and/or may be liable therefor to the third-party plaintiff. The third-party defendant served an answer and asserted against the plaintiff the counterclaim which is the subject of this motion.

The third-party defendant, in its said counterclaim, alleges that it is a corporation duly organized under and by virtue of the laws of the Republic of Mexico; that "between on or about August 1, 1938, and December 26, 1938, the plaintiff converted to its own use approximately 1,700,000 barrels of petroleum crude oil, the property of the third-party defendant, produced from oil wells in the State of Vera Cruz, Republic of Mexico, owned by the third-party defendant, of the value of $1,700,000." The third-party defendant demands judgment against the plaintiff in the said sum of $1,700,000 with interest, and judgment dismissing the complaint. There is no reference in the counterclaim to the expropriation of the oil wells by a decree of March 18, 1938, made by the Mexican President, assuming to act under the Expropriation Law enacted by the Mexican Congress and promulgated November 23, 1936, or to plaintiff's purchase from a corporate agency of the Mexican government of the oil from the expropriated wells.

Plaintiff's motion for summary judgment, dismissing the counterclaim of the third-party defendant, is made upon the counterclaim, the reply thereto and certain affidavits, to which are annexed certified copies of official Mexican records including the Expropriation Law enacted by the Mexican Congress, the Expropriation Decree, issued by its President, and further Presidential Decrees creating the "General Administration of National Petroleum" on January 30, 1937, and promulgating two laws of the Mexican Congress both dated June 7, 1938, creating two governmental corporations known as the "Petroleos Mexicanos" and "Distribuidora de Petroleos Mexicanos". The Petroleos Mexicanos, as stated in the law creating it, was organized to take over the expropriated oil properties and the Distribuidora de Petroleos Mexicanos was likewise created as the governmental corporate agency through which the expropriated oil and oil from nationalized fields was sold. Plaintiff's contract, dated August 1, 1938, to purchase the oil involved in this litigation was with the distributing corporation. The occasion for the issuance of the Presidential Decree of Expropriation on March 18, 1938, was the alleged failure or inability of the third-party defendant to comply with an award or order of a Mexican Labor Board, which had been sustained by the Mexican Supreme Court.

The issue presented on this motion is whether the third-party defendant, a Mexican corporation, can question in the courts of this country the validity under Mexican law of a decree of the President of Mexico expropriating certain oil properties of the third-party defendant located in the Poza Rica field, State of Vera Cruz, Mexico. The third-party defendant contends that it has the right to show that the Expropriation Law of the Mexican Congress, under which the decree was issued by President Cardenas, was unconstitutional under the constitution of Mexico and therefore a nullity, so that any decree issued by the President under the said statute would not in fact be the act of the sovereign, the Republic of Mexico (The Mexican United States).

The third-party defendant contends that there are questions of fact involved in this motion: (1) What is the correct interpretation of the Mexican constitution and law, applicable to the expropriation in Mexico of the property of the third-party defendant; and (2) Did President Cardenas' action in signing the decree and proclaiming the expropriation, constitute Mexican governmental action? There is no question but that Senor Cardenas is and was the President of the Republic of Mexico, or that he issued the expropriation decree of March 18, 1938, as president, or that the decree recites that it was thus issued under the Expropriation Law of the Mexican Congress promulgated November 25, 1936. Prima facie, what President Cardenas thus did was the act of the sovereign, the Republic of Mexico. The third-party

defendant asks this Court to go back of the decree and to determine if the Expropriation Law, the statute under which President Cardenas assumed to act, is constitutional under the Constitution of the Republic of Mexico. I am of the opinion that this Court has not jurisdiction to determine that question. Although under the short form allegation of conversion in the counterclaim this Court has jurisdiction of the counterclaim asserted, the Court on the facts laid before it on this motion in the affidavits and exhibits has not jurisdiction to go forward and adjudge as to the validity of the title acquired by plaintiff through the expropriation by the Mexican government and the sale of the oil to plaintiff by one of the Mexican governmental corporations. Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 312, 62 L. Ed. 733.

■ Concededly the acts of a foreign sovereign in expropriating property within its own territory are not reviewable in our Courts, even if the actor agent or the property later comes within the jurisdiction of the courts. Underhill v. Hernandez, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456; American Banana Company v. United Fruit Co., 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826, 16 Ann.Cas. 1047; Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 312, 62 L.Ed. 733; Shapleigh v. Mier, 299 U.S. 468, 57 S.Ct. 261, 81 L.Ed. 355, 113 A.L.R. 253; United States v. Belmont, 301 U.S. 324, 57 S.Ct. 758, 81 L. Ed. 1134. May our courts scrutinize the official decrees of the head of a foreign nation, in the light of the laws of that country, to determine whether his acts are in fact the acts of the sovereign? If our Courts may not do this, the motion for summary judgment must be granted as a matter of law. Rules of Civil Procedure for District Courts, rule 56(b) (c), 28 U.S. C.A. following section 723c.

■ As was stated by Mr. Justice Holmes in the American Banana Co. case, supra [213 U.S. 347, 29 S.Ct. 512, 53 L.Ed. 826, 16 Ann.Cas. 1047], "The very meaning of sovereignty is that the decree of the sovereign makes law". A foreign sovereign power must, in our Courts, "be assumed to be acting lawfully".

■ I quote the following paragraph from the Oetjen case, supra, which was quoted with approval at page 328 of 301 U.S., 57

S.Ct. at page 760, 81 L.Ed. 1134, of the opinion in the Belmont case, supra: "The principle * * * that the conduct of one independent government cannot be successfully questioned in the courts of another is as applicable to a case involving the title to property brought within the custody of a court, such as we have here, as it was held to be to the cases cited, in which claims for damages were based upon acts done in a foreign country, for it rests at last upon the highest considerations of international comity and expediency. To permit the validity of the acts of one sovereign state to be reëxamined and perhaps condemned by the courts of another would very certainly 'imperil the amicable relations between governments and vex the peace of nations.'"

In the Hernandez case, supra, Chief Justice Fuller stated the principle as follows [168 U.S. 250, 18 S.Ct. 84, 42 L.Ed. 456]: "Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves."

The case of Shapleigh v. Mier, 299 U.S. 468, 57 S.Ct. 261, 81 L.Ed. 355, 113 A.L.R. 253, did not vary the rule laid down in the Oetjen and Ricaud cases, supra. In fact those two cases were later cited with approval in United States v. Belmont, 301 U.S. 324, 57 S.Ct. 758, 81 L.Ed. 1134.

It should be noted that the Shapleigh case, supra, and the Fremont case, Fremont v. United States, 17 How. 542, 15 L.Ed. 241, on both of which the third-party defendant relies, involved the legal title to territory formerly part of Mexico, but at the time of the litigation concededly part of the United States.

The Belmont case, supra, also stated the principle of law to be applied when a foreign national, such as this third-party defendant, seeks relief in our Courts against the acts of its own government, 301 U.S. at page 332, 57 S.Ct. at page 761, 81 L.Ed. 1134: "What another country has done in the way of taking over property of its nationals, and especially of its corporations, is not a matter for judicial consideration here. Such nationals must look to their own government for any redress to which they may be entitled."

On the facts of the case upon which this motion is made it appears that the third-party defendants, whose property with others was the subject of the Presidential Expropriation Decree, is a corporation organized under the laws of the Republic of Mexico and as such it cannot seek a review of the validity of the decree in our courts. Its proper tribunal is in the courts of Mexico.

For the foregoing reasons plaintiff's motion for summary judgment dismissing the counterclaim of the third-party defendant is granted. Submit order on notice.